**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEVIN LEVENSTEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ELANCO ANIMAL HEALTH INCORPORATED and BAYER CORPORATION,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kevin Levensten ("Plaintiff"), individually and on behalf of all others similarly situated, and, based on knowledge with respect to his own actions and upon information and belief with respect to all other matters, brings this class action against Defendants Elanco Animal Health Incorporated and Bayer Corporation (collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1. This action arises out of Defendants' willful, reckless, and negligent marketing and sale of Seresto flea collars which cause serious health consequences to dogs, cats, and humans.

2. The Seresto flea collars contain potent insecticides which the EPA has linked to 75,000 incident reports related to the flea collars, including 1,698 pet deaths and 1,000 reports of harm to humans.

3. Defendants marketed and sold the Seresto flea collars without warning consumers that dogs, cats, and humans could experience serious adverse health consequences by using or coming in contact with the flea collars.

1

4.     Plaintiff brings this class action on behalf of all others similar situated seeking relief for Defendants' unlawful and unjust marketing and sale of the Seresto flea collars.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

6.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this district, and the events giving rise to Plaintiff's claims arise out of Defendants' contacts with this district, including the sale of the Products.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district; because the Plaintiff resides in this district; and because the Defendants caused harm to Class members residing in the district.

## PARTIES

8.     Plaintiff is a resident and citizen of Pennsylvania. Plaintiff purchased a Seresto brand flea collar for his dog. *See* Plaintiff's receipt, attached hereto as Exhibit A. Plaintiff's dog then experienced seizures after using the collar. *See* Plaintiff's veterinarian records, attached hereto as Exhibit B.

9.     Defendants Elanco Animal Health Incorporated ("Elanco") is an Indiana corporation with its principal place of business in Greenfield, Indiana.

10.     Defendant, Bayer Corporation, is a German Corporation with a United States headquarters located in Whippany, New Jersey. Prior to divesting its animal health division to Elanco Animal Health in August 2019 for $7.6 billion, Bayer developed, tested, manufactured, and marketed the Seresto Collar between 2012-2019.

## FACTUAL ALLEGATIONS

11.     Defendants design, manufacture, advertise, distribute, and sell animal health products throughout the United States, including the Seresto flea collars for dogs and cats ("Products").

12.     The Products were originally designed by Bayer and were released in 2012. The Products are currently sold by Elanco.

13.      The Products are intended to be worn by dogs or cats and release a small amount of pesticide over the course of multiple months to protect the pet from fleas, ticks, and other pests.

14.     The Products' ingredients caused and continue to cause severe injury to both pets and humans ("Defect").

15.     The Products' active ingredients are the insecticides imidacloprid and flumethrin which are released onto the pet's hair and skin when wearing the flea collar .

16.     The U.S. Environmental Protection Agency ("EPA") has received over 75,000 incident reports related to the Products, including 1,698 pet deaths and 1,000 reports of harm to humans.

17.     Pet-related adverse events caused by the Products include seizures, rashes, and death.

18.     Human-related adverse events caused by the Products include rashes, neurological issues, heart palpitations, nausea, eye irritation, ocular pain, ocular redness, blurred vision, eyelid

edema, numbing, skin lesions, rhinitis, urticaria, pruritus, erythema, conjunctivitis, nasal irritation, and nasal discharge.

19.     The EPA links the incidents to flumethrin, one of the active ingredients in the Products.

20.     The Products are the only flea collar registered with the EPA that uses flumethrin.[1]

21.     Defendants' labels and package inserts do not warn that the Products may cause many different adverse health consequences. In fact, the package inserts warn only that "scratching, redness, and hair loss" may occur "rarely" and that it is not necessary to remove the collar to treat these conditions. The package inserts further warn that "dermatitis, inflammation, eczema or lesions" occur only "in very rare cases." The labels and package inserts do not warn of any specific risks to humans.

22.     Defendants knew or should have known that the Products cause severe health consequences to dogs, cats, and humans.

23.     Defendants misrepresent to consumers that the Products are safe, veterinarian-recommended, and would not cause severe health consequences when used as directed.

24.     Defendants failed to disclose the Product's safety risks consumers and that the Products can cause severe health consequences when used as directed.

25.     As a result of Defendants deceptive, unfair, and unlawful conduct, Plaintiff and Class members incurred significant damages and heartbreaking loss.

## CLASS ALLEGATIONS

26.     Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23.

---

[1] https://assets.documentcloud.org/documents/20473297/epa-hq-opp-2016-0031-0031.pdf

27.     The Class is defined as follows:

> All persons in the State of Pennsylvania who purchased a Seresto
> Flea and Tick Collar between March 31, 2015 and the date of class
> certification.

28.     The Class excludes the following: Defendants, their affiliates, and their current and former employees, officers and directors, and the Judge assigned to this case.

29.     Plaintiff reserves the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

30.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. There have been at least 1,698 pet deaths and 75,000 incident reports related to the Products. There are likely hundreds of thousands of Class members. The Class is ascertainable by records in Defendants' possession.

31.     *Commonality*: Questions of law or fact common to the class include, without limitation:

a.   Whether the Products are defective;

b.   The scientific nature of the Defect;

c.   Whether Defendants knew of the Defect;

d.   Whether Defendants deceived consumers about the Defect;

e.   Whether Defendants misrepresented the Defect;

f.   Whether Defendants omitted material information about the Defect;

g.   Whether Defendants engaged in fraud;

h.   Whether Defendants engaged in deceptive or unfair trade practices;

i.   Whether Defendants breached the Products' warranties; and

j.   Whether Defendants were unjustly enriched.

32.     *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class members. Plaintiff and Class members purchased the Product. Plaintiff suffered economic damages in the form of out-of-pocket costs. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendants relating to the same course of conduct and the same Defect, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

33.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

34.     *Predominance*: Questions of law or fact common to Class members predominate over any questions affecting only individual members. Common questions such as the extent, nature, causes, and results of the Defect, Defendants' knowledge and concealment of the Defect, and Defendants' liability predominate over individual questions such as measurement of economic damages.

35.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the Class is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties

and the court system, this class action presents far fewer management difficulties while providing

unitary adjudication, economies of scale and comprehensive supervision by a single court.

36.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be

encountered in the management of this action that would preclude its maintenance as a class action.

37.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P.

23(b)(3).

38.      Defendants have acted, and refused to act, on grounds generally applicable to the

Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

39.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P.

23(b)(2).

<u>**STATUTES OF LIMITATIONS**</u>

40.     Plaintiff hereby incorporates by reference each of the preceding allegations as

though fully set forth herein.

41.     Defendants are estopped from relying upon any statutes of limitations by reason of

their fraudulent misrepresentation, suppression and concealment of material facts, and any

applicable statutes of limitations are tolled by such conduct.

42.     Defendants did not inform Plaintiff or Class members about the Defect inherent in

the Products even though Defendants knew about the Defect at the time of purchase.

43.     As a result of Defendants' omissions and misrepresentations, Plaintiff and the Class

members did not know about the Defect inherent in the Products.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW
73 Pa. Stat. Ann. § 201-1 *et seq.***

44.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

45.     Defendants expressly and impliedly misrepresented to Plaintiff and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use as safe.

46.     Defendants failed to notify, omitted, and concealed from Plaintiff and Class members that the Products were defective, mislabeled, and unsafe.

47.     Defendants knew that their misrepresentations and omissions were materially false or misleading.

48.     Defendants knew that their misrepresentations and omissions would induce Plaintiff and Class members to purchase the Products.

49.     Defendants distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

50.     These misrepresentations and omissions became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

51.     The Products did not conform to Defendants' representations because the Products were defective, mislabeled, and unsafe.

52.     Plaintiff and Class members would not have paid for the Products if they knew that the Products did not conform to Defendants' representations.

53.     Defendants' conduct constitutes unfair competition and/or unfair or deceptive acts in violation of 73 Pa. Stat. Ann. § 201-3.

54.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

8

## COUNT II
## BREACH OF EXPRESS WARRANTIES
### U.C.C. § 2-313

55. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

56. U.C.C. § 2-313 has been codified at 13 Pa. Stat. and Cons. Stat. Ann. § 2313.

57. U.C.C. § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise.

58. Defendants, at the time of sale of the Products, expressly warranted through their marketing, advertising, labeling, packaging, and representations of the Products, *inter alia*, that the Products were safe. Defendants further warranted that the Products were merchantable and fit for their ordinary use.

59. Defendants' advertising, labeling, packaging, and representations constitute express warranties which became part of the basis of the bargain and part of the contract between Plaintiff and Class members, on the one hand, and Defendants on the other.

60. Plaintiff and Class members were exposed to such statements concerning the safety of the Products and expressly relied upon them.

61. This warranty became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

62. Defendants distributed, offered for sale, and sold the Products with this warranty.

63. The Products did not conform to this warranty because they were defective, mislabeled, and unsafe as described above, and were not merchantable and fit for their ordinary use.

64.     Plaintiff and Class members would not have paid for the Products if they knew that the Products did not conform to the warranty.

65.     As a direct and proximate result of Defendants' conduct and breach, Plaintiff and Class members have been injured and sustained damages, because they would not have purchased the Products if they had known the true facts and that the Products did not have the characteristics, quality, or value that was promised.

**COUNT III**
**BREACH OF IMPLIED WARRANTIES**
**U.C.C. § 2-314**

66.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

67.     U.C.C. § 2-314 has been codified at 13 Pa. Stat. and Cons. Stat. Ann. § 2314.

68.     U.C.C. § 2-314 provides that a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

69.     Defendants are merchants with respect to the Products under U.C.C. § 2-314.

70.     Defendants, at the time of sale of the Products, impliedly warranted, *inter alia*, that the Products were merchantable and fit for their ordinary use.

71.     Defendants' implied warranties became part of the basis of the bargain and part of the contract between Plaintiff and Class members, on the one hand, and Defendants on the other.

72.     This warranty became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

73.     Defendants distributed, offered for sale, and sold the Products with this warranty.

74.     The Products did not conform to this warranty because they were defective, mislabeled, and unsafe as described above, and were not merchantable and fit for their ordinary use.

10

75. Plaintiff and Class members would not have paid for the Products if they knew that the Products did not conform to the warranty.

76. As a direct and proximate result of Defendants' conduct and breach, Plaintiff and Class members were injured and sustained damages, because they would not have purchased the Products had they known the true facts and that the Products did not have the characteristics, quality, or value that was promised.

## COUNT IV
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301, et seq.

77. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

78. As alleged above, Defendants expressly and impliedly warranted the Products.

79. Defendants are warrantors within the meaning of the Magnuson-Moss Warranty Act.

80. Plaintiff and Class members are consumers within the meaning of the Magnuson-Moss Warranty Act.

81. As alleged above, Plaintiff and Class members were damaged by Defendants' failure to "comply with any obligation under [the Magnuson-Moss Warranty Act], or under a written warranty, implied warranty, or service contract."

82. Defendants have been afforded a reasonable opportunity to cure such failure to comply but have not attempted to do so.

83. Pursuant to 15 U.S.C. § 2310(d), Plaintiff and Class members are entitled to damages, other legal and equitable relief, attorneys' fees and expenses.

## COUNT V
## FRAUD

84.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

85.     Defendants expressly and impliedly misrepresented to Plaintiff and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use.

86.     Defendants failed to notify, omitted, and concealed from Plaintiff and Class members that the Products were defective, mislabeled, and unsafe.

87.     Defendants knew that their misrepresentations and omissions were materially false or misleading.

88.     Defendants knew that their misrepresentations and omissions would induce Plaintiff and Class members to purchase the Products.

89.     Defendants distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

90.     These misrepresentations and omissions became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

91.     The Products did not conform to Defendants' representations because the Products were defective, mislabeled, and unsafe.

92.     Plaintiff and Class members would not have paid for the Products if they knew that the Products did not conform to Defendants' representations.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

12

## COUNT VI
## NEGLIGENCE

94. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

95. Defendants had a duty to exercise reasonable care in designing and manufacturing the Products.

96. Defendants had a duty to ensure that the marketing, advertising, labeling, packaging, and representations of the Products were truthful, accurate, and not deceptive or misleading.

97. Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

98. Defendants failed to exercise reasonable care in designing and manufacturing the Products, evidenced by the Products' Defect.

99. Defendants expressly and impliedly misrepresented to Plaintiff and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use.

100. Defendants failed to notify, omitted, and concealed from Plaintiff and Class members that the Products were defective, mislabeled, and unsafe.

101. Defendants knew their design and manufacturing processes would result in the Defect and cause the Products to be unsafe.

102. Defendants knew their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

103. Defendants knew their misrepresentations and omissions would induce Plaintiff and Class members to purchase the Products.

104. In breach of their duties to consumers, Defendants distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

105. These misrepresentations and omissions became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

106. The Products did not conform to Defendants' representations because the Products were defective, mislabeled, and unsafe.

107. Plaintiff and Class members would not have paid for the Products had they known the Products did not conform to Defendants' representations.

108. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT VII
## NEGLIGENCE – FAILURE TO WARN

109. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

110. Defendants had a duty to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products.

111. Defendants had a duty to ensure that the marketing, advertising, labeling, packaging, and representations of the Products were truthful, accurate, and not deceptive or misleading.

112. Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

113. Defendants breached their duty to exercise reasonable care in warning Plaintiff and Class members of the unsafe risks of the Products, evidenced by the lack of a warning concerning the Products' Defect on the label.

114.    Defendants expressly and impliedly misrepresented to Plaintiff and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use.

115.    Defendants failed to notify, omitted, and concealed from Plaintiff and Class members that the Products were defective, mislabeled, and unsafe.

116.    Defendants knew their design and manufacturing processes would result in the Defect and cause the Products to be unsafe.

117.    Defendants knew their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

118.    Defendants knew their misrepresentations and omissions would induce Plaintiff and Class members to purchase the Products.

119.    Defendants distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

120.    These misrepresentations and omissions became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

121.    The Products did not conform to Defendants' representations because the Products were defective, mislabeled, and unsafe.

122.    Plaintiff and Class members would not have paid for the Products if they knew that the Products did not conform to Defendants' representations.

123.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT VIII
## NEGLIGENCE – FAILURE TO TEST

124.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

125.    Defendants had a duty to exercise reasonable care in testing the Products for any potential unsafe effects.

126.    Defendants had a duty to ensure that the marketing, advertising, labeling, packaging, and representations of the Products were truthful, accurate, and not deceptive or misleading.

127.    Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

128.    Defendants breached their duty to exercise reasonable care in testing the Products for any potential unsafe effects, evidenced by the widespread injuries caused by the Products.

129.    Defendants expressly and impliedly misrepresented to Plaintiff and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use.

130.    Defendants failed to notify, omitted, and concealed from Plaintiff and Class members that the Products were defective, mislabeled, and unsafe.

131.    Defendants knew their design and manufacturing processes would result in the Defect and cause the Products to be unsafe.

132.    Defendants knew  their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

133.    Defendants knew  their misrepresentations and omissions would induce Plaintiff and Class members to purchase the Products.

134.     Defendants distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

135.     These misrepresentations and omissions became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

136.     The Products did not conform to Defendants' representations because the Products were defective, mislabeled, and unsafe.

137.     Plaintiff and Class members would not have paid for the Products had they known the Products did not conform to Defendants' representations.

138.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

**COUNT IX**
**STRICT LIABILITY – DESIGN DEFECT**

139.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

140.     Defendants had a duty to exercise reasonable care in designing the Products.

141.     Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

142.     Defendants failed to exercise reasonable care in designing the Products, evidenced by the Products' Defect.

143.     The Defect causes the Products to be unreasonably dangerous due to the Products causing severe injury or death when used as intended or in a reasonably foreseeable manner.

144.     The Defect causes the Products to not perform safely as a reasonable consumer would expect when used as intended or in a reasonably foreseeable manner.

145.     A reasonable consumer would conclude that the risk of harm caused by the Defect outweighs the cost of making the Products safe.

146.     The Products were unreasonably dangerous when they left Defendants' control.

147.     The Defect is unknowable and unacceptable to a reasonable consumer.

148.     Defendants are strictly liable to Plaintiff and Class members for the dangerous design of the Products.

149.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

<u>COUNT X</u>
**STRICT LIABILITY – MANUFACTURING DEFECT**

150.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

151.     Defendants had a duty to exercise reasonable care in manufacturing the Products.

152.     Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

153.     Defendants failed to exercise reasonable care in manufacturing the Products, evidenced by the Products' Defect.

154.     The Defect causes the Products to be unreasonably dangerous due to the Products causing severe injury or death when used as intended or in a reasonably foreseeable manner.

155.     The Defect causes the Products to not perform safely as a reasonable consumer would expect when used as intended or in a reasonably foreseeable manner.

156.     A reasonable consumer would conclude that the risk of harm caused by the Defect outweighs the cost of making the Products safe.

157.     The Products were unreasonably dangerous when they left Defendants' control.

18

158. The Defect is unknowable and unacceptable to a reasonable consumer.

159. Defendants are strictly liable to Plaintiff and Class members for the dangerous manufacturing of the Products.

160. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT XI
## STRICT LIABILITY – FAILURE TO WARN

161. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

162. Defendants had a duty to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products.

163. Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

164. Defendants failed to exercise reasonable care in warning Plaintiff and Class members of the unsafe effects of the Products, evidenced by the widespread injuries caused by the Products.

165. The Defect causes the Products to be unreasonably dangerous due to the Products causing severe injury or death when used as intended or in a reasonably foreseeable manner.

166. The Defect causes the Products to not perform safely as a reasonable consumer would expect when used as intended or in a reasonably foreseeable manner.

167. A reasonable consumer would conclude that the risk of harm caused by the Defect outweighs the cost of making the Products safe.

168. The Products were unreasonably dangerous when they left Defendants' control.

169. The Defect is unknowable and unacceptable to a reasonable consumer.

19

170. Defendants are strictly liable to Plaintiff and Class members for failure to warn of the dangerous effects of the Products.

171. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

<u>**COUNT XII**</u>
**STRICT LIABILITY – FAILURE TO TEST**

172. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

173. Defendants had a duty to exercise reasonable care in testing the Products for any potential unsafe effects.

174. Defendants owed a duty of care to Plaintiff and Class members who were the likely and foreseeable purchasers and customers of the Products.

175. Defendants failed to exercise reasonable care in testing the Products for any potential unsafe effects, evidenced by the lack of a warning concerning the Products' Defect on the label.

176. The Defect causes the Products to be unreasonably dangerous due to the Products causing severe injury or death when used as intended or in a reasonably foreseeable manner.

177. The Defect causes the Products to not perform safely as a reasonable consumer would expect when used as intended or in a reasonably foreseeable manner.

178. A reasonable consumer would conclude that the risk of harm caused by the Defect outweighs the cost of making the Products safe.

179. The Products were unreasonably dangerous when they left Defendants' control.

180. The Defect is unknowable and unacceptable to a reasonable consumer.

181. Defendants are strictly liable to Plaintiff and Class members for failure to test for the dangerous effects of the Products.

182. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT XIII
## UNJUST ENRICHMENT

183. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

184. Defendants expressly and impliedly warranted and misrepresented to Plaintiff and Class members through marketing, advertising, labeling, packaging, and representations of the Products that the Products were merchantable and fit for their ordinary use.

185. Defendants failed to notify, omitted, and concealed from Plaintiff and Class members that the Products were defective, mislabeled, and unsafe.

186. Defendants knew their misrepresentations and omissions were materially false or misleading or had reckless or negligent disregard of the same.

187. Defendants knew their misrepresentations and omissions would induce Plaintiff and Class members to purchase the Products.

188. Defendants distributed, offered for sale, and sold the Products subject to these misrepresentations and omissions.

189. These misrepresentations and omissions became part of the basis of the bargain that Plaintiff and Class members reasonably and justifiably relied upon when purchasing the Products.

190. The Products did not conform to Defendants' representations because the Products were defective, mislabeled, and unsafe.

191.    Plaintiff and Class members would not have paid for the Products if they knew that the Products did not conform to Defendants' representations.

192.    Defendants knowingly accepted and retained profits from Plaintiff and Class members' purchases of the Products.

193.    It would be unjust for Defendants to retain such profits due to Defendants' misrepresentations and omissions that induced Plaintiff and Class members to pay for the Products.

194.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have been injured and sustained damages.

195.    Plaintiff and Class members are entitled to restitution from Defendants for the purchase of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendants as follows:

a.  For an order certifying the Class, appointing Plaintiff as Representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b.  For compensatory damages, restitution, and/or refund of all funds acquired by Defendants from Plaintiff and the Class members as a result of Defendants' unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

c.  Payment of costs and expenses of suit herein incurred;

d.  Both pre-and post-judgment interest on any amounts awarded;

e.  Payment of reasonable attorneys' fees and expert fees;

f.  Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.


Dated: May 24, 2021                    Respectfully submitted,

                                       */s/ Daniel C. Levin*
                                       Daniel C. Levin, Esq.
                                       Nicholas J. Elia, Esq.
                                       **LEVIN SEDRAN & BERMAN LLP**
                                       510 Walnut Street, Suite 500
                                       Philadelphia, PA 19106-3697
                                       Telephone: (215) 592-1500
                                       dlevin@lfsblaw.com
                                       nelia@lfsblaw.com

                                       */s/ SDL 3792_____*
                                       Scott D. Levensten, Esq.
                                       **THE LEVENSTEN LAW FIRM, P.C.**
                                       346 S. 15th Street
                                       Philadelphia, PA 19102
                                       Telephone: 215-545-5600
                                       Fax: 215-545-5156
                                       sdl@levenstenlawfirm.com

                                       *Attorneys for Plaintiff*